COMMERCIAL BANK OF ALBANY *vs.* NATHANIEL EDDY & another.

Where A. guaranties to B. any debt that C. may owe him, and B. sues A. on the guaranty, alleging in his declaration that C. was indebted to him on a certain promissory note, B. may give in evidence, for preliminary purposes, a judgment recovered by him against C. on that note; but such judgment is not evidence, as against A., that C. was indebted to B. on the note.

A. agreed, by letter of guaranty, delivered to B. in February 1831, to be responsible to a bank "for any moneys, notes, discounts or accounts whatever, that B." might "contract, receive a credit for, or be in any wise indebted to the said bank:" In February 1834, the bank discounted a draft drawn by K. on B., and by him accepted, payable to P. and C.; and in March 1834, discounted a promissory note, made by B., payable to T.'s order, and indorsed by T. In an action by the bank against A. on this letter of guaranty, to recover the amount of said draft and note, it was *held* that A. might give evidence that B. kept said letter in his possession until the autumn of 1833; that he then applied in writing to the bank to discount the drafts of K. on him, stating that the money was wanted for K., and offering to deposit said letter, as collateral security; that the bank required that said letter should be first renewed and confirmed, and that A. thereupon renewed and confirmed it, at B.'s request, and that B. then delivered it to the bank; and that the bank never afterwards discounted any draft or note for B., or for his benefit. *Held also,* on this evidence, that the bank could not maintain said action against A.; that he was answerable only for such drafts of K. on B. as the bank should discount for B or on his request, or for his particular benefit.

ASSUMPSIT on the following agreement of guaranty: "We, the undersigned Nathaniel Eddy and William S. Eddy, of

Middleborough, in the county of Plymouth and Commonwealth of Massachusetts, merchants, doing business under the style and firm of Nathaniel and William S. Eddy, in consideration of one dollar paid us by the President, Directors and Company of the Commercial Bank of Albany, do hereby promise and agree with said bank, that we are and will hold ourselves liable and respon- sible to the said bank in the first instance for any moneys, notes, discounts or accounts whatever, that John M. Eddy and Horatio Ames, of said Albany, doing business under the firm and style of Eddy & Ames, may contract, receive a credit for, or be in any wise indebted to the said bank, at any time hereafter, while they shall continue to do business in company, as aforesaid, not exceeding the sum of five thousand dollars. Dated at said Middleborough, the 12th day of February 1831.

Nathaniel Eddy,<br>William S. Eddy."

" To H. Bartow, Esq., Cashier of Commercial Bank, Albany. We hereby consent that the obligation executed by us to your bank, on the 12th of February 1831, for the benefit of Eddy & Ames, continue in full force.     Yours,     Nathaniel Eddy,

William S. Eddy.

" E. Middleborough, December 10th 1833."

The plaintiffs alleged in their declaration, that on the 23d of February 1834 they discounted a bill of exchange drawn on said John M. Eddy and Horatio Ames, on the 12th of October 1833, by L. Kinsley & Co., of Salisbury, Connecticut, for $620·79, payable to the order of Paige & Cassidy, in six months, and accepted by said Eddy & Ames ; and had also, on the 3d of March 1834, discounted a promissory note, dated February 1st 1834, whereby said Eddy & Ames promised to pay to the order of J. & J. Townsend, on the 15th of May 1834, the sum of $1736·92, and which note was indorsed by said Townsends.

The plaintiffs' claim on the defendants, under the said agreement, was for the amount of said bill of exchange and note.

At the trial before *Wilde*, J., the plaintiffs offered in evidence

a copy of a judgment recovered by them, in the supreme court of New York, in October 1834, against said Eddy & Ames, in a suit on said bill of exchange and note, for $2,433·64 damages, and $46·54 costs. This evidence was rejected, and the plaintiffs became nonsuit, subject to the opinion of the whole court on the admissibility of said evidence.

This case was argued at October term 1841, by *W. Baylies & Packard*, for the plaintiffs, and by *Eddy & Coffin*, for the defendants. The opinion of the court was delivered at the last October term.

SHAW, C. J. This action was commenced by a bank in Albany, on an alleged guaranty, given by the defendants in favor of a firm formerly doing business at Albany, under the style of Eddy & Ames. The said guaranty, which is in writing, is set forth in the case. The plaintiffs, after offering this agreement, proposed to give in evidence a judgment recovered in the State of New York, by the plaintiffs, against the said Eddy & Ames. This judgment purports to be founded on two securities, viz. a bill of exchange, accepted by the said Eddy & Ames, and indorsed to the plaintiffs, and a promissory note, made by said Eddy & Ames, and indorsed in like manner. This judgment, after several appearances and continuances, and a day assigned for trial, appears to have been entered upon a withdrawal of the plea, and a submission of the defendants to a judgment. The defendants objected to this judgment as incom petent, and it was rejected by the judge ; whereupon the plaintiffs became nonsuit, subject to the opinion of the court on the question whether it was admissible.

It does not appear whether, at the trial, this evidence was offered as proof that the said Eddy & Ames were indebted to the plaintiffs, or for any other and special purpose ; and it seems probable from what has passed at the argument, that such distinction was not taken.

As proof that the plaintiffs had given said Eddy & Ames credit under the guaranty, and as a ground of recovery against the defendants, on such guaranty, it was not available ; it was *res inter alios,* a judgment in a suit to which the defendants were

not parties or privies.   It is now argued, that this judgment was admissible for some purposes, and if admissible for any purpose, that the nonsuit ought to be taken off, to let in the plaintiffs to their other proofs.   And the court are of opinion that, for some purposes, this judgment was competent evidence. It was proper to prove that such a judgment had been rendered, and that it purported to be founded on two negotiable securities of said Eddy & Ames; it proved the fact of the merger. of those securities in the higher security of a judgment.   If the same rule prevails in New York as here, (and no doubt it does,) when a judgment is rendered on negotiable notes, they are impounded and retained on the files of the court, subject to the order of the court, that no improper use may be made of them after being thus merged.   Such being the case, the judgment would be proper evidence to lay the ground for the production of the proof of copies of the notes and other evidence of the actual indebtedness of Eddy & Ames to the plaintiffs, and the credit given them.   It might also be evidence to show the use of due diligence to obtain payment of the principal, or at least to avoid the imputation of laches.

There is another purpose also, which more fully appears by an incident which came out on the subsequent trial, to be noticed hereafter.   It there appears, that at or about the time that this judgment was rendered, the cashier of the plaintiffs' bank addressed a letter to the defendants, informing them of the recovery of this judgment, and claiming payment thereof from the defendants in pursuance of their guaranty.   The judgment would therefore be competent evidence to show the meaning and intent of that letter, and the subject matter to which it referred.   *Drummond* v. *Prestman,* 12 Wheat. 515.   *Church in Brattle Square* v. *Bullard,* 2 Met. 363.   The court are therefore of opinion, that the nonsuit be taken off, and the case stand for a trial.

___

At a new trial before *Wilde,* J., the plaintiffs gave in evidence the instrument of guaranty declared on, a copy of the judgment which was rejected at the former trial, and a letter to

the defendants, written by the plaintiffs' cashier, dated October 21st 1834, and stating that Eddy & Ames were indebted to the plaintiffs in the sum of $2482·18, for which the plaintiffs had obtained judgment, and also had the defendants' guaranty, dated February 12th 1831, and afterwards renewed; and requesting the defendants to pay said debt to the bank, or to said cashier, as attorney of the bank, without delay, to save the necessity of enforcing the judgment against them.    The plaintiffs also offered proof of having discounted the bill of exchange, and the promissory note, mentioned in their declaration, at the times therein alleged.

The defendants introduced the following evidence : That said Eddy & Ames kept the said letter of guaranty in their possession, without using it, until the autumn of 1833, when they wrote this letter to the plaintiffs' cashier: "H. Bartow, Esq. Dear Sir : We should like to have the drafts of L. Kinsley & Co. of Salisbury, Connecticut, on Eddy & Ames, discounted at your bank, and will deposit with you the obligation of Nathaniel and William S. Eddy, as collateral security.   The money is wanted expressly for Kinsley & Co., and you may rely on its having a first rate circulation.   Yours, Eddy & Ames:" That said Kinsley & Co. were a firm with whom said Eddy & Ames were connected in business : That the plaintiffs, after inquiry, were satisfied of the sufficiency of the defendants' security ; but that, as the said letter was of long standing, and had not been used, the plaintiffs required that it should be renewed and confirmed; and that it was on that occasion, that the confirmation of December 10th 1833 was made by the defendants: That said letter of guaranty, and the confirmation thereof, were delivered to the plaintiffs about the 17th of December 1833 : That the plaintiffs afterwards dis counted no drafts or notes for said Eddy & Ames, or for their benefit ; that they twice applied to the plaintiffs to discount for them drafts of Kinsley & Co., but that the plaintiffs, on these occasions, declined to make such discounts, on the ground that they could then only supply their regular customers: That said Eddy & Ames were doing business as partners, in Albany,

when the bill and note now in question were discounted by the plaintiffs; that they stopped payment in March 1834, but continued to do business in company, until the dissolution of their partnership, on the 25th of May 1834.

Upon this evidence, the defendants contended that said guaranty was accepted, if accepted at all, to secure the pay ment of the drafts of Kinsley & Co., (mentioned in the foregoing letter,) upon Eddy & Ames, which should be discounted by the plaintiffs for them, or by their request, or for their use and benefit; and the judge ruled, that upon the evidence, the defendants were answerable only for such drafts of Kinsley & Co., on Eddy & Ames, as the plaintiffs should discount for said Eddy & Ames, or on their request, or for their particular benefit; and that their names being on said bill of exchange and note was not sufficient to bring the plaintiffs' case within the terms of the guaranty, as accepted and qualified by the evidence.

The plaintiffs objected to the said evidence, offered by the defendants, as inadmissible, and incompetent to limit or control the original letter of guaranty. The judge overruled the objection, and a verdict was taken for the defendants, subject to the opinion of the whole court upon the evidence.

New trial to be granted, if the ruling of the judge was not right, or if, on the evidence, the plaintiffs are entitled to recover.

*W. Baylies,* for the plaintiffs.

*Eddy & Coffin,* for the defendants.

SHAW, C. J. On this case the question is, whether the plaintiffs can apply this guaranty so as to charge the defendants, for the amount of the two securities bearing the name of Eddy & Ames, and discounted, one at the request and for the benefit of Messrs. Townsend, and the other of Messrs. Paige and Cassidy.

The paper in question, or letter of guaranty, was delivered by the defendants to Eddy & Ames, to be used at their pleasure, and with authority to deliver it; but until that authority was executed by them, and it was in fact delivered to the plaintiffs and accepted by them, it was a proposal only,

not a contract. But when it was presented to the bank and acted upon by them, that was a sufficient acceptance by them to give it the effect of a contract. In this case, of course it was a provisional contract, binding them to nothing until the bank should give credit upon it.

It appears to us, that as it was competent for Eddy & Ames to use this instrument or not, at their pleasure, so it was competent for them to restrict and limit the operation of it to any one of the purposes expressed in it, or to any number, less than the whole, of the objects and purposes included in the general terms of the guaranty. Eddy & Ames might have strong motives and direct interests, so to limit the operation of the guaranty ; and having a power to refuse and decline delivering it on other terms, if the plaintiffs consented to accept it upon such terms, they were bound by them. This, we think, does not impugn the maxim, that the terms of a written contract are not to be controlled or varied by parol evidence. Here, the delivery of the instrument was an act distinct from the making and execution of it, done at a distinct time, by an agent; and such act was necessary to give it effect. Such act of delivery and acceptance, and the circumstances attending it, we think may be proved by parol evidence.

But if the maxim were applicable, this case would hardly come within it, because the terms, on which the guaranty was delivered to the plaintiffs, were expressed in writing by the letter of Eddy & Ames, accompanying it and delivered with it. This paper was made by them, at the suggestion of the cashier, in order that the purpose might be definitely expressed. It is always competent to introduce parol evidence, to show, when a particular object — whether an instrument, a parcel of land, or an article of personal property — is alluded to in a written instrument, that a particular thing, falling within the general terms, was intended ; in other words, to identify the subject matter referred to. According to this rule, it was competent to show, by parol evidence, that the contract of Nathaniel and William S. Eddy, mentioned in Eddy & Ames's letter, was the same instrument now relied upon as a general guaranty ; and this was

properly so proved. It was then a proposal to discount a par-
ticular kind of securities, for a special purpose, for which the
proposer offered to deposit this guaranty. By fair construc-
tion, we think this proposal limited the offer of this guaranty
to that purpose only; and its acceptance by the plaintiffs, on
that offer, bound them to apply it to cases coming within the
terms of such proposal. If it were otherwise; if it could be
made applicable to all notes and drafts, discounted for other
persons, but bearing the names of Eddy & Ames; it would be
manifestly contrary to the intentions of the parties at the time
of its acceptance; and we think there is no inflexible rule of
law requiring such a construction. We are therefore of opin
ion, that the guaranty of the defendants did not so operate as
to indemnify the plaintiffs against the acceptance and note of
Eddy & Ames, discounted for Messrs. Townsend, and Messrs.
Paige and Cassidy, respectively, and that there is no sufficient
ground to set aside the verdict for the defendants.

*Judgment on the verdict.*